IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **WALTER GUY** | § | |
|    **TDCJ-CID #10029578** | § | |
| | § | |
| **VS.** | § | **C.A. NO. C-07-473** |
| | § | |
| **P.A. BRIONES, ET AL.** | § | |

**MEMORANDUM AND OPINION ORDER ON PENDING
MOTIONS FOR SUMMARY JUDGMENT**

In this civil rights action, plaintiff Walter Guy claims that defendants Sergeant Cavazos and Nurse Patrick Jennings were deliberately indifferent to his serious medical needs while he was incarcerated at the Nueces County Jail. (D.E. 1, 6). He claims further that Officer Mark Turley used excessive force against him in violation of his right to be free from cruel and unusual punishment. (D.E. 80). Each defendant moves for summary judgment to deny plaintiff's Eighth Amendment claims. (D.E. 82, 91, and 96). Plaintiff has filed responses in opposition, and he has filed a cross motion for summary judgment. (D.E. 84, 102, 104). For the reasons stated herein, defendants' motions are granted, and plaintiff's claims are dismissed with prejudice.

**I.      Jurisdiction.**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. Upon consent of the parties (D.E. 17, 30, 40, 93, 113), this case was referred to the undersigned magistrate judge to conduct all further proceedings, including entry of final judgment (D.E. 114). See 28 U.S.C. § 636(c).

## II.     Procedural background and plaintiff's allegations.

Plaintiff is a former inmate in the Nueces County Jail in Corpus Christi, Texas.  In fact, during 2007-08, he was incarcerated at the jail on three separate occasions: March 29 – April 26, 2007; May 16 – July 10, 2007; and October 25, 2007 – February 21, 2008.  He filed this civil rights action on December 3, 2007, alleging deliberate indifference to his serious medical needs and conspiracy claims against certain Nueces County Jail officers and medical staff.  (D.E. 1).  On January 3, 2008, he filed a supplemental complaint alleging that certain jail staff had illegally searched his cell and confiscated his tennis shoes.  (D.E. 6).

A Spears[1] hearing was conducted on March 11, 2008.  Following the hearing, plaintiff's claims of deliberate indifference against Nurse Patrick Jennings and Sergeant Cavazos were retained, while his remaining claims against the remaining defendants were dismissed.  (D.E. 27).

On November 4, 2008, plaintiff was granted leave to file his first amended complaint to raise an excessive force claim against Officer Turley.  (D.E. 77, 80, 89).[2]

On September 22, 2008, Sergeant Cavazos filed his motion for summary judgment. (D.E. 82).  On November 20, 2008, Nurse Jennings filed his motion for summary judgment.

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[2] Plaintiff has filed numerous motions to amend complaint and amended complaints. (See D.E. 33, 48, 60, 98, 103).  However, he was granted leave only to raise a claim of excessive force against Officer Turley.  (See D.E. 77, 80, and 89).

(D.E. 91).  On December 5, 2008, Officer Turley filed his summary judgment motion.  (D.E. 96).

Plaintiff has filed responses in opposition to defendants' summary judgment motions, as well as a cross motion for summary judgment.  (D.E. 84, 102).

**III.    Summary judgment evidence.**

The following facts are supported by the summary judgment evidence:

In 1992, plaintiff suffered a back injury while at the Nueces County Jail.

On March 29, 2007, plaintiff was arrested and taken to the Nueces County Jail.  That same day, he was medically screened by Nurse Karen Neal.  (D.E. 26, MR at 4-5).[3]  Nurse Neal noted that plaintiff's medical history was positive for a herniated disc, a rod in his right foot, and hypertension.  (MR at 4).  He was taking the prescribed medications Celebrex, Flexiril, and Lortab.  Id.

On April 2, 2007, plaintiff submitted an Inmate Communication Form ("ICF"), stating that he was suffering pain as a result of an altercation with jail officers that had occurred on September 23, 2006.  (MR at 23).  Plaintiff was scheduled to see a physician.  Id.

On April 7, 2007, plaintiff submitted a second ICF requesting that he be given his tennis shoes to wear.  (MR at 21).  Plaintiff explained that he needed the tennis shoes due to

---

[3] A copy of plaintiff's medical records were filed by Sergeant Cavazos with his answer at D.E. 26, and are incorporated into the motions for summary judgment.  Reference to plaintiff's medical records is to "MR."   Reference to all other motions is by docket entry number, followed by the exhibit letter and page reference if applicable.

3

a medical disability.  Id.  Plaintiff was informed that the medical staff would talk to Property Officer Simmons about getting his tennis shoes.  Id.

Also on April 7, 2007, plaintiff submitted another ICF requesting that he be prescribed pain medication.  (MR at 20).  Plaintiff was scheduled to see a doctor.  Id.

On April 9, 2007, plaintiff submitted an ICF addressed to Nurse Jennings requesting that he be provided physical therapy.  (MR at 19).  Plaintiff was seen by a physician's assistant ("PA") that day.  (MR at 14).  Plaintiff told the PA that he had a rod in his foot and that he needed his Jordon shoes from his property because the shower shoes aggravated his foot.  Id.  In addition, plaintiff told the PA that the fussion was done two years ago, and that he was taking physical therapy before coming to jail.  The PA approved the use of tennis shoes, ordered that plaintiff's medical records be obtained, discontinued Motrin and prescribed Percogesic for his pain.  Id.

On April 12, 2007, plaintiff submitted an ICF addressed to Nurse Jennings complaining that his medications had been "modified several times," and that he was not receiving the appropriate medical care.  (MR at 18).  Plaintiff requested that he be referred to a back and foot specialist.  Id.  By response dated April 13, 2007, plaintiff was informed that he was scheduled to see Dr. Flores.  Id.

On April 19, 2007, plaintiff submitted a sixth ICF addressed to Nurse Jennings complaining that he had not gained weight since being incarcerated, and he requested that he be provided a double portion of food if possible.  (MR at 17).

Plaintiff was released from the jail on April 26, 2007.

4

Plaintiff returned to the jail a second time on May 16, 2007. He was medically screened that day. (MR at 30-34). He was assigned the lower level of the jail with a lower bunk, and he was authorized to keep his tennis shoes. Id. at 30. He was prescribed Percogesic and Parafon Forte DSC to manage pain. Id. at 83.

On May 23, 2007, plaintiff submitted an ICF addressed to Nurse Jennings requesting that his medications be reevaluated, and that he be assigned to a medical unit. (MR at 67). He was scheduled to see a doctor. Id.

Again on May 23, 2007, plaintiff submitted an ICF addressed to Nurse Jennings complaining that he was experiencing weight loss problems, and he requested a double portion of food. (MR at 66). It was noted that he was scheduled for a doctor's visit. Id.

On May 25, 2007, plaintiff submitted an ICF addressed to Nurse Jennings asking that he be seen by a specialist for his foot and back pain, and also requesting physical therapy. (MR at 65). By response dated the same day, it was noted that plaintiff had been seen by Dr. Flores and that he did not need to see a specialist. Id.

On May 30, 2007, plaintiff submitted an ICF addressed to Nurse Jennings complaining that he was not receiving effective pain management. (MR at 64). Plaintiff noted that he had been questioned by the FBI concerning his complaints. Id. By response dated the same day, Dr. Flores continued plaintiff on Percogesic for pain. Id. at 64, 80.

On June 2, 2007, plaintiff submitted an ICF addressed to Nurse Jennings stating that he was a bronchitis patient and that he was experiencing serious medical problems and needed to see a doctor. (MR at 63). Plaintiff was scheduled to see a doctor. Id.

5

On June 6, 2007, plaintiff submitted an ICF addressed to the Shift Sergeant complaining that he had not been given his medication that morning.  (MR at 62).  By response dated June 7, 2007, plaintiff was informed that he had not received his medication the morning of June 6th because he was not in his cell, and that he received his medication at 2:00 p.m.  Id.

On June 13, 2007, plaintiff filed an ICF complaining that Nurse Angele had denied him his medication because he was in the law library.  (MR at 61).

On June 29, 2007, plaintiff filed an ICF complaining that he needed stronger pain medication and that he wanted to be evaluated by a specialist.  (MR at 58). At that time, he was still taking Percogesic for pain.  Id. at 75.  Plaintiff was referred to a physician's assistant.  Id. at 58.

On June 30, 2007, plaintiff filed an ICF addressed to Nurse Jennings asking for a copy of his medical records.  (MR at 59).  By response dated July 2, 2007, plaintiff was informed that he could obtain copy of his records through his attorney.  Id.

On July 2, 2007, plaintiff submitted an ICF complaining that the medical staff had refused his request to see a back and foot specialist.  (MR at 56).

On July 9, 2007, Dr. Flores prescribed Darvocet for plaintiff's pain.  (MR at 71).

By letter dated July 5, 2007, Nurse Jennings related that he had reviewed plaintiff's complaints regarding medical care submitted in April and May of 2007.  He responded:

> Upon admission in April and again in May of this year, you related a history of chronic L/S disc problems and a one and one-half old fused rt. foot.  You were referred to the Physician

6

> Assistant and medication was prescribed for your chronic conditions. Subsequent x-rays and follow-up was provided by a licensed physician on contract with the Sheriff's department. Tennis shoes were approved by the physician and property officer was notified to search and provide. Multiple medications were provided to assist you with pain management. In consultation with the medical director, it is determined that you are not in need of specialty care at this time. I will continue to consult with the physician and clinically we will continue to monitor your condition and adjust your medication accordingly.

(MR at 55).

On July 7, 2007, plaintiff submitted a 6-page letter to Bruce Holstein, identified as the president and CEO of Christus Spohn Health System, detailing his complaints concerning the medical care he was receiving at the jail. (MR at 49-54). Plaintiff related that, in the freeworld, he received epidural shots to the spine, physical therapy, and stronger pain medication. Id. at 50. He complained that Dr. Flores, Nurse Jennings, and P.A. Briones modified his medications, but failed to alleviate his pain. Id. He claimed that these medical providers failed to refer him to a back specialist or to see a podiatrist, and argued that their medical licenses should be revoked. Id. at 50-51.

Plaintiff further related that his current pain was caused from an August 25, 1992 incident that occurred at the jail. Id. at 52. He claims that, at that time, the medical staff tried to "hide" his injuries by not providing x-rays. Id. He requested that an investigation be conducted into the practices of Nurse Jennings, Dr. Flores, and PA Briones. Id. at 54.

Also on July 7, 2007, plaintiff submitted an ICF complaining that he was being charged for clinic appointments and medication, and that he should not be working because

x-rays taken February 14, 2007 revealed that his "spinal bone" was cracked.  (MR at 48).
By response dated July 9, 2007, PA Briones informed plaintiff that his account would be
credited for the charges, and that his request to not work would be discussed.  Id.

On May 18,  2007, plaintiff was seen by Dr. Flores regarding his request to restart
medication for his back.  (MR at 47).  Dr. Flores prescribed Disalced 500mg twice a day, and
Parafon Forte DSC 500mg two tablets twice a day.  Id.  In addition, he authorized plaintiff's
use of tennis shoes.  Id.

On May 24, 2007, plaintiff was seen again by Dr. Flores regarding his lumbar disc
pain.  (MR at 46).  Dr. Flores prescribed Disalced and Percogesic.  Id.

On May 31, 2007, plaintiff was seen in the infirmary requesting that he be sent to a
specialist for his back and foot problems.  (MR at 45).  Plaintiff was continued on his
medications as ordered.  Id.

On June 4, 2007, plaintiff was seen in the infirmary due to coughing up blood and a
sore throat.  (MR at 43).  He was prescribed Sudafed and Percogesic.  Id.

On June 13, 2007, plaintiff returned to the infirmary seeking refills of his prescription
medications.  (MR at 42).  He was continued on Percogesic for pain.  Id.

On July 2, 2007, plaintiff was continued on Percogesic.  (MR at 40), and on July 3,
2007, he was also prescribed Parafon Forte DSC.  Id. at 38.

On July 9, 2007, plaintiff was prescribed Darvocet for his pain.  (MR at 36).

On July 10, 2007, plaintiff was released from the jail.

8

On October 25, 2007, plaintiff returned to the Nueces County Jail. (MR at 86-88, 92-94, 126-27). At his medical screening, it was noted that his right foot had a metal rod and that he suffered from hypertension and chronic back pain. Id. at 86, 88. Plaintiff was taking Lortab and Naproxen for pain. Id. at 86.

On October 28, 2007, plaintiff submitted an ICF requesting pain medication. (MR at 125). He was scheduled to meet with a doctor. Id.

On November 11, 2007, plaintiff submitted an ICF addressed to Nurse Jennings requesting that he be prescribed medication to relieve his back and foot pain. (MR at 124). On November 15, 2007, plaintiff was prescribed Darvocet. Id. at 118.

On November 16, 2007, plaintiff complained that money had been taken from his trust fund account for an x-ray, and he inquired as to whether or not he would have to pay for medication refills. (MR at 123). Plaintiff was advised that he would have to pay $3.00 for refill medications. Id.

On November 18, 2007, plaintiff submitted an ICF addressed to Nurse Jennings complaining that on August 25, 1992, he was assaulted by employees at the jail who "cracked" his spine, and that he was now being denied proper medical treatment. (MR at 122). Plaintiff requested physical therapy, muscle relaxants, and a referral to a specialist. Id.. By response dated that same day, plaintiff was advised that his inmate trust fund account would be credited $3.00, that a referral to a specialist was not warranted at the time, and that he could seek out a specialist when he was not in jail. Id.

On November 25, 2007, plaintiff submitted an ICF stating that the jail was responsible for providing all appropriate medical services while he was incarcerated.  (MR at 121).  On November 26, 2007, PA Briones acknowledged plaintiff's complaint.  Id.

On November 28, 2007, plaintiff asked for the name of the doctor who was refusing him proper medical care.  (MR at 120).  In addition, plaintiff complained that Officer Morin had committed theft by taking his tennis shoes.  Id.  By response dated November 29, 2007, plaintiff was advised that Dr. Flores was the jail contract physician.  Id.  He was instructed to submit a non-medical grievance concerning his tennis shoes.  Id.

On December 17, 2007, plaintiff submitted an ICF stating that he was entitled to appropriate medical care while incarcerated, and that he was suffering from chronic illnesses.  (MR at 119).  On December 18, 2007, PA Briones noted that plaintiff's complaint had been acknowledged.  Id.

On January 4, 2008, plaintiff submitted an ICF again stating that he was entitled to a certain quality of medical treatment and that the doctors were ethically bound to provide such treatment.  (MR at 107).  By response dated January 5, 2008, Nurse Leal inquired as to what kind of treatment plaintiff was requesting.  Id.

On January 11, 2008, plaintiff was seen in the infirmary by Dr. Flores with a chief complaint of "pain."  (MR at 100).  Dr. Flores prescribed Darvocet.  Id.

On January 20, 2008, Sergeant Cavazos authorized a shakedown of the unit upon information that plaintiff had a razor blade in his cell.  (D.E. 82, Cavazos Aff't at ¶ 2).  During a shakedown, all inmates lie down to be placed in hand restraints, and they are then

10

escorted out of the area to be searched.  Id.  At approximately 2:15 p.m., Sergeant Cavazos, Officer Turley, and three other officers went to unit 6B to conduct the shakedown.  Id. at ¶ 3.  All of the inmates were ordered to get on the floor and to place their hands behind their backs.  Id.  Plaintiff refused to lie down on the ground.  Id.  Sergeant Cavazos did not hear plaintiff mention any medical problems.  Id.  Officer Turley took plaintiff to the ground.  Id.  Officer Tatman searched plaintiff's cell and found a razorblade wrapped in toilet paper and hidden in some legal paperwork.  Id. at ¶ 4.  As plaintiff was being escorted to a holding cell on the second floor, he requested medical attention.  Id.  Plaintiff was then taken to the medical clinic.  Id.  Plaintiff was seen by a nurse and cleared to return to his cell.  Id

Plaintiff was charged with a disciplinary violation.  (D.E. 82, Ex. E at 5).  Plaintiff waived his right to a formal hearing, and was found guilty of possessing contraband, a minor violation.  Id.  As punishment he received 10 days rack up, including loss of commissary, property, phone calls and visitation.  Id.

On January 28, 2008, plaintiff filed a 5-page ICF complaining about the January 20, 2008 incident.  (D.E. 82, Ex. F at 2-6).  In particular, he alleged that Sergeant Cavazos, Officer Turley, and the other three officers conducting the shakedown of his cell violated his constitutional rights by ordering him to lie on the ground against his medical restrictions, and that Officer Turley used excessive force when he placed him in restraints.  Id.

An investigation was opened concerning plaintiff's complaints arising from the January 20, 2008 shakedown.  (D.E. 82, Ex. F at 1, 7-22).  The five officers that entered

plaintiff's cell each testified that plaintiff refused to comply with instructions and was restrained.  Id. at 7-8, 9-10, 11-12, 13-14, and 15-16.  Officer Turley testified:

> As stated in my original use of force report, Walter Guy was placed on the ground and Officer P. Tatman assisted me placing hand restraints on Walter Guy for officer safety.  Walter was ordered several times to lay down face down on the floor and he refused to do so.  As stated before, I placed Walter on the ground for officer safety.

(D.E. 82, Ex. F at 16).

On January 23, 2008, plaintiff submitted an ICF requesting to see a doctor due to the use of force employed on January 20, 2008.  (MR at 106).  On January 24, 2008, plaintiff was scheduled for a doctor's appointment.  Id.

On January 25, 2008, plaintiff was seen by Dr. Flores.  (MR at 99).  Plaintiff told Dr. Flores that, when the guards did the shakedown of his cell, Officer Turley placed his knee on plaintiff's back, causing him pain.  Id.  Plaintiff also complained that his present pain medication was not working, and he requested Naproxen.  Id.  Dr. Flores' impression was chronic back pain and lumbar back strain.  Id.  He continued plaintiff on Darvocet and added Naproxen.  Id.  (See also MR at 114).

On February 7, 2008, plaintiff submitted an ICF requesting that he be housed in a medical unit.   (MR at 105).  On February 8, 2008, PA Briones informed plaintiff that his request was denied.  Id.

Plaintiff was discharged from the jail on February 21, 2008.

## IV.    Summary judgment standard.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  Id.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." <u>Caboni</u>, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." <u>Anderson</u>, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id.</u> at 248.

**V.     Discussion.**

**A.     Physical injury.**

Defendants move for summary judgment on the grounds that plaintiff has failed to establish that he suffered more than a *de minimis* injury as a result of defendants' conduct. (<u>See</u> D.E. 82 at 7-8; D.E. 91 at 6-7).

14

Section 1997e(e) of Title 42 provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injuries suffered while in custody without a prior showing of physical injury." The physical injury required by § 1997e(e) must be more than *de minimis*, but need not be significant. Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999). The Fifth Circuit has explained that because the physical injury requirement is not specifically defined, "well established Eighth Amendment standards" must guide a court's analysis as to whether a prisoner has sustained physical injury sufficient to support a claim. Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).

As to Sergeant Cavazos and Officer Turley, plaintiff maintains that, as a result of the January 20, 2008 incident, he suffered additional back pain. (D.E. 19 at 6). He argues that, by requiring him to lie down on the floor and have his arms cuffed behind him, he suffered further injury to his lower back. He points out that, two days later, he reported to the infirmary requesting additional medication, in particular, Naproxen, and that Dr. Flores prescribed it. (See MR at 99). As to Nurse Patrick Jennings, plaintiff maintains that, in denying him proper medical care, he caused him to suffer unnecessary pain. (D.E. 102 at 7).

Plaintiff fails to establish that he suffered a constitutionally cognizable injury as a result of the conduct of Sergeant Cavazos, Officer Turley, or Nurse Jennings. Plaintiff's medical records reflect that he suffered from a herniated lumbar disc and a rod in his right foot *prior* to his March 2007 incarceration. (MR at 4-5). Plaintiff told medical personnel that his back was "fused" in October 2005, that his back pain was aggravated in December 2006, after

15

he was allegedly assaulted by a police officer, and that he was receiving physical therapy and narcotic pain medication.[4]  Id. at 10, 13, 14.  Thereafter, he was repeatedly seen in the infirmary for his complaints of back pain and requests for additional or stronger pain medication.  (See MR at 20, 67, 64, 58, 50, 46, 42, 125, 124, 122).  That is, plaintiff has a history of back pain and a history of seeking stronger pain medication.

Following the January 20, 2008 incident, he was immediately taken to the infirmary.  (D.E. 82, Ex. F at 12).  Plaintiff was checked by the registered nurse on duty, with no injuries reported.  Id. at 15.  Thereafter, he was released back to his cell.  Id.  Three days later, on January 23, 2008, he submitted an ICF requesting to see a doctor due to the altercation.  (MR at 106).  Plaintiff listed his injuries as "suffering pain from incident which occurr[ed] 01-20-08."  Id.  He was seen on January 25, 2008, and Dr. Flores prescribed Naproxen in addition to the Darvocet plaintiff was already taking.  (MR at 99).

Plaintiff fails to demonstrate that he suffered anything more than a *de minimis* injury as a result of the January 20, 2008 incident.  Even if his back pain was aggravated on January 23, 2008, the pain is indistinguishable from the chronic back pain due to his lumbar surgery and herniated disc condition.  It cannot be said that the mere aggravation of an existing injury is more than *de minimis* under the facts of this case.  See e.g. Earl v. Dretke, 177 Fed. Appx. 440, 441-42 (5th Cir. 2006) (unpublished) (loss of fingernail, bleeding, and swelling *de*

---

[4] By letter dated July 7, 2007, plaintiff told the CEO of Christus Spohn Health System that his back pain arose following an August 25, 1992 incident at the Jail that was later "covered-up."  (MR at 52).

16

*minimis*); <u>Luong v. Hatt</u>, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (sore muscles, scratches, abrasions, and bruises insufficient to constitute a physical injury within the meaning of § 1997e(e)); <u>Gordon v. Moffett</u>, 2008 WL 2964888, at *5 (S.D. Tex. Jul. 30, 2008) (unpublished) (sore muscle, aching back, scratch, abrasion, or bruise that would not cause a "free world person" to seek medical treatment is *de minimis*); <u>Muckelroy v. Garcia</u>, 2006 WL 1409714 (N.D. Tex. May 23, 2006) (unpublished) (shoulder injury resulting from door slamming on plaintiff's arm, neck, and shoulder *de minimis*).  Plaintiff cannot identify a specific "injury" caused by defendants, and the fact that he continued to have pain, where he has always had pain, does not establish an injury.  His continuing back pain is insufficient to meet the physical injury requirement of § 1997e(e).  <u>Desroche v. Strain</u>,  507 F. Supp. 2d 571, 581 (E.D. La. 2007).  Thus, plaintiff cannot show that the actions of Sergeant Cavazos or Officer Turley caused more than a *de minimis* injury, such that he fails to state a claim for § 1983 relief.

Similarly, plaintiff  fails to identify an injury caused by the actions or inactions of Nurse Jennings.  Although he contends that Nurse Jennings was unresponsive to his complaints of pain, he fails to allege, let alone prove, that the failure to alleviate his pain caused  any injury more than discomfort.  Moreover, as evidenced by his medical records, he has been experiencing the same type of pain for years as a result of his herniated disc, related back problems, and the rod in his foot. There is no medical evidence to suggest that he suffered a new injury or that his pain increased significantly as a result  of being incarcerated

and/or Nurse Jennings' management of his medical treatment.  Thus, plaintiff fails to demonstrate that Nurse Jennings caused him to suffer more than a *de minimis* injury.

Accordingly, all defendants are entitled to summary judgment because plaintiff fails to establish that he suffered an injury that was more than *de minimis*.

**B.     Deliberate indifference to serious medical needs.**

Even if plaintiff could establish an injury for purposes of 42 U.S.C. § 1997e(e), he fails to establish that Sergeant Cavazos or Nurse Jennings were deliberately indifferent to his serious medical needs.

Deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  "Deliberate indifference describes a state of mind more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety."  Farmer v. Brennan, 511 U.S. 825, 835 (1994) (construing Estelle, 429 U.S. at 104).  To establish an Eighth Amendment violation, an inmate must show that a prison official "act[ed] with deliberate indifference [and] exposed a prisoner to a sufficiently substantial risk of serious damage to his future health."  Id. at 37.

A mere disagreement with the level and type of treatment is not actionable under the Eighth Amendment.  Estelle, 429 U.S. at 107; Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Young v. Gray, 560 F.2d 201 (5th Cir. 1977).  An incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met.  Domino v. Texas Dep't of

Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).  A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  Id. (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)).  Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm.  Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).  Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.  Banuelos, 41 F.3d at 235.

### Sergeant Cavazos

Plaintiff claims that Sergeant Cavazos was deliberately indifferent to his serious medical needs because he ordered him to the ground, despite his herniated disc.  Plaintiff claims that Sergeant Cavazos was aware of his medical condition because of his prior incarcerations and because he walked with a cane and wore special tennis shoes.

Sergeant Cavazos testified as to the events leading up to the January 20, 2008 shakedown:

> I was the shift supervisor at the Nueces County jail on January 20, 2008.  That day a guard had found a note during key check that said inmate Walter Guy had a razor-blade in his cell located in unit 6B of the jail.  After receiving the report, I authorized a full cell search or "shake-down" of the unit, whereby all inmates lie down, are placed in hand-restraints, and then escorted out of the unit so it can be thoroughly searched for contraband, including weapons.  This procedure is in place for the safety of the inmates and the officers.  Razor blades are

contraband and pose a significant risk of injury to guards and
jail residents.

(D.E. 82, Ex. A, Cavazos Aff't at ¶ 2).

Sergeant Cavazos continues that, around 2:15 p.m., he and officers Turley, Rakes,
Barron and Tatman went to unit 6b to conduct the shakedown. (D.E. 82, Ex. A, Cavazos
Aff't at ¶ 3). All of the inmates were ordered to get on the floor and place their hands behind
their backs. Id. One inmate, not plaintiff, told Sergeant Cavazos that he was not physically
able to lie on the ground, and he was allowed to remain on his bed. Id.

Sergeant Cavazos states that, on January 20, 2008, he did not know plaintiff on any
personal basis, nor did he have any knowledge about his medical condition. (D.E. 82, Ex.
A, Cavazos Aff't at ¶ 5). At the time of the shakedown, Sergeant Cavazos did not hear
plaintiff complain of a medical condition that would prevent him from complying with his
orders, nor did he hear him request his shoes or cane. Id. at ¶ 3. Sergeant Cavazos observed
plaintiff refused to comply with the orders, and he resisted Officer Turley's attempt to get
him to the ground. Id.

After he was restrained, plaintiff was escorted to a holding cell on the second floor.
(D.E. 82, Ex. A, Cavazos Aff't at ¶ 4). He requested to go to medical, and was immediately
taken to the infirmary. Id. A nurse checked him and he was released back to a cell. Id.

Officer Tatman searched plaintiff's cell and found a razorblade. (D.E. 82, Ex. A,
Cavazos Aff't at ¶ 4). Plaintiff was charged with a possession of contraband, and was later
found guilty of the offense. (D.E. 82 Ex. E at 5).

20

In his summary judgment response (D.E. 102), plaintiff does not contest the facts as set forth by Sergeant Cavazos.  He does not offer any evidence to rebut or put into issue Sergeant Cavazos' testimony that he did not know plaintiff or know of his medical problems at the time of the January 20, 2008 shake-down.  He does not relate any past relationship or history with Sergeant Cavazos to demonstrate that this defendant should have known him or about his medical condition.  Plaintiff does not claim that he told Sergeant Cavazos that he could not lie on the ground during the shakedown.  Sergeant Cavazos testified that he specifically allowed another inmate to remain on his bed when he communicated that he could not lie on the ground, yet plaintiff never requested this accommodation.  (D.E. 82, Ex. A, Cavazos Aff't at ¶ 3).  Moreover, Sergeant Cavazos never physically touched plaintiff.  Id. at ¶ 5.

There is simply no evidence that Sergeant Cavazos was aware of a serious risk of harm to plaintiff, and ignored that risk, when conducting the unit shakedown.  Sergeant Cavazos is entitled to summary judgment in his favor.

### Nurse Jennings

Plaintiff contends that Nurse Jennings was deliberately indifferent to his serious medical needs because he withheld medical treatment and pain medication.  (See D.E. 1, 6, and 80).  Nurse Jennings argues that plaintiff received appropriate and timely medical treatment such that plaintiff fails to state an Eighth Amendment claim.

Plaintiff's medical records establish that he received prompt and appropriate care while in the Nueces County jail.  Plaintiff's ICRs were answered within a day.  He routinely

met with a doctor or the PA concerning his medical needs.  He was medically approved to live on the lower floor, assigned a lower bunk, and authorized to keep his tennis shoes. Adjustments were repeatedly made to his pain medication.  The fact that the jail did not provide physical therapy or epidural shots for his back problems does not amount to deliberate indifference.  Prisoners are not entitled to "the best that money could buy" regarding medical treatment.   Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

The uncontested evidence establishes that plaintiff's medical problems were addressed timely and appropriately.  Plaintiff fails to offer any evidence to suggest that Nurse Jennings knew of a serious medical condition and then ignored it.  Nurse Jennings is entitled to judgment in his favor.

## C.    Excessive force.

Plaintiff claims that Officer Turley used excessive force on January 20, 2008, when he  forced him to the ground during the unit shakedown and then applied hand-restraints. Plaintiff claims that Officer Turley knew of his back condition, but despite that knowledge, forced him to the ground and put his knee into plaintiff's back, causing him pain.

For an excessive force claim, plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis* but not necessarily significant.  See Hudson v. McMillian, 503 U.S. 1, 6-7, 10, (1992) (stating that a claimant must show officials applied force maliciously and sadistically for the very purpose of causing harm); Gomez v. Chandler, 163 F.3d 921, 923-24 (5th Cir. 1999); Siglar v.

Hightower, 112 F.3d 191, 193 (5th Cir. 1997).  The factors to be considered are (1) the extent

of the injury suffered; (2)  the need for application of force; (3) the relationship between that

need and the amount of force used; (4) the threat reasonably perceived by the responsible

officials; and (5)  any effort made to temper the severity of a forceful response.  Gomez, 163

F.3d at 923.

        In his affidavit Officer Turley stated that he had heard of plaintiff prior to the

shakedown, and that he had seen him ambulate ***without*** a cane both before and after the

January 20, 2008 incident.  (D.E. 97, Turley Aff't at ¶ 5).  He did not know that plaintiff had

a medical condition, in part because unit 6B is a general population unit.  Id.  At the time of

the shakedown, Officer Turley was unaware of any medical condition of plaintiff had that

would prevent him from lying on the ground or complying with officers' orders.  Id.

        In his summary judgment response, plaintiff fails to refute any of the facts attested to

by Officer Turley.  He fails to establish that Officer Turley knew of a serious medical

condition and then ignored it.  In addition, the context in which the force was applied, a unit

shakedown upon information that ***plaintiff*** himself possessed a razorblade, and plaintiff's

refusal to obey the orders,  justifies the means employed by Officer Turley to protect the

safety of himself and others.  In addition, Sergeant Cavazos testified that the force employed

to bring plaintiff to the ground and to restrain him was in accordance with jail procedures.

(D.E. 82, Ex. A, Cavazos Aff't at ¶ 5).

        Moreover, during the shakedown, all of the offenders in unit 6B were present, yet

plaintiff has failed to offer the testimony of a single inmate suggesting that the force employed

was excessive.  Because Officer Turley did not know of plaintiff's medical condition, and because plaintiff admits that he refused to follow orders, Officer Turley's actions in taking him to the floor and restraining him are not excessive, but reasonable under the circumstances. Officer Turley is entitled to judgment in his favor.

## V.    Conclusion.

Plaintiff fails to establish a constitutionally cognizable injury such that summary judgment in defendants' favor is warranted.  Moreover, plaintiff fails to establish a genuine issue of material fact as to his deliberate indifference to serious needs claims against Sergeant Cavazos and Nurse Jennings.  The uncontested evidence establishes that Sergeant Cavazos had no previous knowledge of plaintiff's medical condition when he ordered him to lie down on the floor.  As to Nurse Patrick Jennings, the uncontested summary judgment evidence demonstrates that he provided appropriate medical treatment and did not ignore a serious medical need.  As to Officer Turley, there is no evidence that the force was applied maliciously, and plaintiff did not sustain more than a *de minimis* injury.

Accordingly, the summary judgment motions of Sergeant Cavazos (D.E. 82), Nurse Jennings (D.E. 91), and Officer Turley (D.E. 96) are GRANTED.  Plaintiff's cross-motion for summary judgment (D.E. 102) is DENIED.  Plaintiff shall take nothing on his claims against defendants, and his claims are dismissed with prejudice.

ORDERED this 17th day of March, 2009.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

24